RECEIVED
DEC 0 6 2023
CLERK, U.S. DISTRICT COURT
ST. PAUL, MINNESOTA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| **JAY RODNEY RICHARD CLAYBORNE** | : |
| PLAINTIFF, | : CASE NO: 23-CV-3612 ECT/TNL |
| VS. | : |
| **THE MINNESOTA DEPARTMENT OF CORRECTIONS, WARDEN BRIAN COLLINS (IN HIS INDIVIDUAL CAPACITY), ASSISTANT WARDEN KRISTINA RISH, (IN HER INDIVIDUAL CAPACITY), CAPTAIN CRYSTAL HANSEN (IN HER INDIVIDUAL CAPACITY) LIEUTENANT JOHN KLAR (IN HIS INDIVIDUAL CAPACITY), LIEUTENANT MIKELOTT (IN HIS INDIVIDUAL CAPACITY), LIEUTENANT DAVID W. EVANS (IN HIS INDIVIDUAL CAPACITY), SERGEANT SPENCER LEKANDER (IN HIS INDIVIDUAL CAPACITY SERGEANT THOMAS FISHBACK (IN HIS INDIVIDUAL CAPACITY), SERGEANT ETHAN BJORKLUND (IN HIS INDIVIDUAL CAPACITY), SERGEANT THOMAS HERMAN (IN HIS INDIVIDUAL CAPACITY), SERGEANT MARC MAGNUSEN (IN HIS INDIVIDUAL CAPACITY), OFFICER MATTHEW NOLAND (IN HIS INDIVIDUAL CAPACITY), DARREL M. BERRY (IN HIS INDIVIDUAL CAPACITY), CHAPLIN EDWARD STONE, and JOHN DOES 1-10, INCLUSIVE,** | : AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS UNDER 42 U.S.C. § 1983 |
| DEFENDANTS. | : |

## AMENDED COMPLAINT AT LAW AND IN EQUITY

AND NOW, comes the Plaintiff, Jay Rodney Richard Clayborne, by and through himself, *pro se*, to file the instant complaint and in support thereof avers as follows:

SCANNED
DEC 0 6 2023
U.S. DISTRICT COURT ST. PAUL

1. The Plaintiff hereby initiates the instant complaint against the Defendants by way of violations of rights under color of state law pursuant to 42 U.S.C. § 1983 resulting from numerous acts of abusive conduct and excessive force utilized by the Defendants while in the custody of the Defendants thereby giving rise to the instant matter.

2. As a direct and proximate result of the misconduct of the Defendants individually and collectively described herein, Plaintiff suffered economic and non-economic damages in an amount to be fully determined in a trial by jury.

3. The Plaintiff is seeking compensatory and punitive damages against each of the Defendants named in the instant matter individually and collectively in an amount to be determined in a trial by jury as well as any and all other Relief deemed necessary and applicable.

## JURISDICTION AND VENUE

4. This is an action for injunctive relief and damages pursuant to 42 U.S.C. § 1983 based upon the continuing violations of Plaintiffs' rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution. Jurisdiction exists pursuant to 28 U.S.C. § 1331 and 1343 based on 42 U.S.C. §1983 and questions of federal constitutional law. Supplemental jurisdiction over Plaintiffs' state law claims is pursuant to 28 U.S.C. §1367 as well as any and all other grounds relevant and pertinent to this legal action.

5. Venue is proper in the District of Minnesota in that the events and conduct complained of herein all occurred in the District of Minnesota.

## PARTIES

6. PLAINTIFF - Jay Rodney Richard Clayborne - is the Plaintiff in the instant matter with an address of Address Line 1, Address Line 2.

7. DEFENDANT, The Minnesota Department Of Corrections, Warden Brian Collins (In His Individual Capacity), Assistant Warden Kristina Rish, (In Her Individual Capacity), Captain Crystal Hansen (In Her Individual Capacity), Lieutenant John Klar (In His Individual Capacity), Lieutenant Mike Lott (In His Individual Capacity), Lieutenant David W. Evans (In His Individual Capacity), Sergeant Spencer Lekander (In His Individual Capacity), Sergeant Thomas Fishback (In His Individual Capacity), Sergeant Ethan Bjorklund (In His Individual Capacity), Sergeant Thomas Herman (In His Individual Capacity), Sergeant Marc Magnusen (In His Individual Capacity), Officer Matthew Noland (In His Individual Capacity), Darrel M. Berry (In His Individual Capacity), Chaplin Edward Stone, And John Does 1-10, Inclusive, - are the Defendants in the instant matter with a primary address of 1000 Lakeshore Drive, Moose Lake, MN 55767.

8. Plaintiff does not know the true names and capacities of the defendants sued as Does 1 through 10, inclusive, and therefore sues these defendants by such fictitious names. Upon information and belief, Defendant may have involvement in the instant matter and/or soon will have involvement in the instant matter. Plaintiff does not currently know the true names and capacities of those who may be liable with regards to the torts and claims identified herein, but Plaintiff will amend his complaint to add the true names and capacities of these defendants when they are ascertained throughout the course of litigation.

## STATEMENT OF FACTS

9. The Plaintiff hereby initiates the instant complaint against the Defendants by way of violations of rights under color of state law pursuant to 42 U.S.C. § 1983 resulting from numerous acts of abusive conduct and excessive force utilized by the Defendants while in the custody of the Defendants thereby giving rise to the instant matter.

### i. Incident #1 - September 13, 2022

10. On September 13th, 2022 in Moose Lake prison, The Plaintiff was put in segregation for identifying their religious and cultural right to be the Chief Spokesman of God and Representative of the Hebrew Israelites, the same name on every letter addressed to any correctional officer who has shown any prejudice, discriminations, and hatred towards Plaintiff's race as a Hebrew and my nationality as an Israelite.

11. In writing, like a lawyer, the Plaintiff represented a Hebrew man who came to the Plaintiff and pointed out that he was told by a correctional officer that if he were to come to the Hebrew Israelite class, the officer would discipline the inmate. Plaintiff confronted the corrections officer through a letter letting him know that he has violated policy and that he has violated the 1st Amendment rights of this person.

12. Three letters were sent to the individual officer. The third letter was used to file a false report against the Plaintiff saying that the Plaintiff had threatened the officer. Two officers conspired together. Plaintiff was then persecuted, immediately being taken to segregation. Plaintiff questioned all parties involved to tell me how I had threatened the officer, and they could not tell the Plaintiff, but still claim that Plaintiff had threatened the officer. Plaintiff complained about it and grieved the persecution, but the Minnesota Department of Corrections did nothing about Plaintiff's persecution, yet, they sided with the unjust actions taken against the Plaintiff.

### ii. Incident #2 - September 28, 2022

13. On September 28, 2022, as the Plaintiff was getting out of segregation 15 days later, one hour out of segregation and going to the property room to retrieve their property, Plaintiff was accused of stealing their own property by the Sergeant of that department. Many other things had

happened at this time, but when all is said and done, this officer used the ICS (Incident Command System) as a weapon against the Plaintiff, sending the Plaintiff to segregation for identifying his character as racist, prejudice, and hateful. An unjust and falsified report was filed against the Plaintiff.

14. Plaintiff questioned and grieved the situation and Minnesota Corrections did nothing about the Plaintiff's persecution, yet they sided with the unjust actions taken against the Plaintiff by the property officer.

### iii. Incident #3 - January 30, 2023

15. January 30th, 2023. I left my unit at around 9:05am to go to the library to make copies. There was an officer posted who knows of my reputation and representation. Also I have heard throughout the facility I am identified as "Black Jesus" by the correction officers.

16. The library was full that day, and looking in the opened door being held by an inmate, I decided to turn around and come back later. The officer then tried to verbally force me to go to the library. I informed him that I was not going to the library, and that I have decided to go back to my unit. But he insisted that I get in line instead. I asked him why? He then told me to get against the wall. I complied as he called other officers over the radio. I asked for his name and he refused to give it to me. They handcuffed me and I was dragged backwards to segregation.

17. In this persecution, I was brought into a room and was surrounded by officers who called me by name. Some familiar, some not. I was circled by them while handcuffed. I refused to be searched because they refused to tell me the reason of their search. They then got a camcorder to film the abuse and rape that was done to me in that room. I was grabbed by officers who screamed out "He's resisting!" As they pulled me down to rush my head into the wall, as my

hands were cuffed behind my back. They held me down cutting my clothes into three pieces stripping me naked humiliating and mocking me!

18. After that, they brought in a chair with wheels on it with straps and bands. They secured me to the chair naked, yet set a white towel over my loins. A white wool bag was placed over my head. My head and my hairs were white like wool. My hands and feet were tied up. I was secured in place and could not move. This was a spit bag placed on my head. I demanded them to take the spit bag off of my head because I was not going to spit at them. The officer said, "We don't know that".

19. I then released a sound of many waters to flood there ears with a promise to have each and everyone of them prosecuted for the torment and torture that I have received of them. That they have persecuted an innocent man, that they have hated me without a cause. That there was no justified reason for the measures they have taken on me, nor any reason to search me. I was humiliated by these officers for their entertainment.

20. I have received cuts and bruises which pictures were later taken. I was wheeled to my assigned segregated room. Two officers who I had wrote grievances on came in to judge me. This report was grievous to my ears. I did not stand a chance. The head officer of segregation said to me, "Plead guilty to this and receive 15 days of segregation, or if you take it to the hearing, I will give you 240 days extended incarceration, it doesn't matter to me." So, knowing that I did not stand a chance, and I did not want to be there 10 months longer, I numbered myself with the transgressors. I plead guilty and signed the paper that gave defamation of character as of the previous falsified reports. I questioned and grieved the situation and was told that I cannot grieve discipline.

21. The Minnesota Department of Corrections did nothing about my persecution, yet they sided with the unjust actions taken against me.

22. I spent 15 days in segregation. I was fed a poison. I know this because I was informed by a correction officer whose identity is to be concealed until he testify of it.

### iv. Incident #4 - February 24, 2023

23. After segregation, 10 days later, February 24, 2023, i fell sick, and temporarily died and came back to life by the grace of my God. This happened in the chow hall in front of many inmates and correction officers. The correction officers cut my clothes off of me stripping me naked for a second time, and they cast lots about who would get me clothes and ride in the ambulance with me. This was at the 6pm diner preparation. They did not take me to the hospital until 7pm. I was shaking with convulsions and tremors from the poison. They could not find a heartbeat. My blood pressure was at 180/96. I couldn't talk or move, but I could see everything that was going on around me.

24. I was at the hospital and the doctor not knowing what was wrong with me, immediately tried to give me the highest dose of two different medications. I refused because that did not seem right. She got mad at me because I refused. I told her that she did not know what was wrong with me, she was just assuming. But she claim because she is a doctor, she knows what's best.

25. I instead took water in my veins. The doctor tried to sneak medication into my I.V. and I caught the nurse who was sent to do it and told her not to do it. She retreated.

26. I told the doctor that I felt like I was poisoned. I asked her to send my blood to a specialist that my blood may be properly examined. The doctor refused to do so, but relayed that message to the on duty captain of Moose Lake prison who has a hateful issue with me. I returned to the prison at 2:00am in the morning. The captain pre-ordered for me to go to segregation upon my

return to the facility. I was not gone more than eight hours from the prison. 24 hours is the minimum to be gone from the facility in order to be segregated for 24 hours, and to be seen by health services the next day. I was placed on administrative segregation and punished for 10 days. I asked why I was segregated, and no one had any answers for me, but I was questioned about what it was that I said to the doctor. After segregation I asked the captain why it was that she placed disciplinary action upon me, and she said that she did not, but the paperwork shows that she did order me to segregation.

27. I questioned the situation and Minnesota Corrections did nothing about my persecution, yet they sided with the unjust actions taken against me.

28. The combination of these incidents jointly and separately demonstrate clear violations of the Plaintiff's various civil rights to be free from cruel and unusual punishment as well as unequal treatment on the basis of race and religion thereby giving rise to the instant mater.

29. As a direct and proximate result of the misconduct of the Defendants individually and collectively described herein, Plaintiff suffered economic and non-economic damages in an amount to be fully determined in a trial by jury.

30. The Plaintiff is seeking compensatory and punitive damages against each of the Defendants named in the instant matter individually and collectively in an amount to be determined in a trial by jury as well as any and all other Relief deemed necessary and applicable.

## COUNT I

### CIVIL ACTION FOR DEPRIVATION OF RIGHTS 42 U.S.C. § 1983

31. The Plaintiff hereby references and incorporates Paragraphs 1 through 31 as though set forth herein at length.

32. Section 1983 provides, in pertinent part: Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. 42 U.S.C. § 1983.

33. To assert a claim under section 1983, Plaintiff must show (1) he had a right secured by the Constitution and laws of the United States that was violated (2) by a person who acted under color of state law. Hall v. Witteman, 584 F.3d 859, 864 (10th Cir. 2009)

34. The complaint must allege an affirmative link between the alleged constitutional violation and the specific individual's participation in that violation. Stidham v. Peace Officer Standards and Training, 265 F.3d 1144, 1156-57 (10th Cir. 2001).

35. The doctrine of qualified immunity "shields government officials performing discretionary functions from individual liability under 42 U.S.C. § 1983 unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." DeSpain v. Uphoff, 264 F.3d 965, 971 (10th Cir. 2001) (quoting Baptiste v. J.C. Penney Co., 147 F.3d 1252, 1255 (10th Cir. 1998) (internal quotation marks omitted)).

36. Once a defendant asserts the defense, the plaintiff must demonstrate that qualified immunity is not proper by showing that "(1) the defendant's conduct violated a constitutional right and (2) the law governing the conduct was clearly established at the time of the alleged violation." DeSpain, 264 F.3d at 971 (quoting Baptiste, 147 F.3d at 1255).

37. The state action requirement refers to the requirement that in order for a plaintiff to have standing to sue over a law being violated, the plaintiff must demonstrate that the government (local, state, or federal), was responsible for the violation, rather than a private actor. According

to the Supreme Court in *Edmonson v. Leesville* Concrete Co., Inc., 500 U.S. 614 (1991),"Although the conduct of private parties lies beyond the Constitution's scope in most instances, governmental authority may dominate an activity to such an extent that its participants must be deemed to act with the authority of the government and, as a result, be subject to constitutional constraints."

38. "In addressing an excessive force or cruel and unusual punishment claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." Wilson v. Spain, 209 F.3d 713, 715 (8th Cir. 2000) (citing Graham v. Connor, 490 U.S. 386, 394 (1989)).

39. The appropriate constitutional right at issue and that corresponding standard is governed by Evenstad's status as either an arrestee, pre-trial detainee, or a convicted inmate: [T]he constitutional standard applied may vary depending upon whether the victim is an arrestee, a pretrial detainee, or a convicted inmate of a penal institution. If the victim is an arrestee, the Fourth Amendment's "objective reasonableness" standard controls. Graham v. Connor, 490 U.S. 386, 388 (1989). The evaluation of excessive force claims brought by pre-trial detainees, although grounded in the Fifth and Fourteenth Amendments rather than the Fourth Amendment, also relies on an objective reasonableness standard. Johnson-El v. Schomehl, 878 F.2d 1043, 1048-49 (8th Cir. 1989). Excessive force claims brought by convicted prisoners fall under the protections provided by the Eighth Amendment's prohibition of cruel and unusual punishment. Whitley v. Albers, 475 U.S. 312, 318-22 (1986). Andrews v. Neer, 253 F.3d 1052, 1060-61 (8th Cir. 2001) (cleaned up); see also Wilson, 209 F.3d at 715 (citation omitted) (quoting Graham, 490 U.S. at 394) ("The Fourth Amendment's prohibition against unreasonable seizures of the person applies to excessive-force claims that 'arise[ ] in the context of an arrest or investigatory

stop of a free citizen,' while the Eighth Amendment's ban on cruel and unusual punishment applies to excessive-force claims brought by convicted criminals serving their sentences.").

40. The combination of these incidents jointly and separately demonstrate clear violations of the Plaintiff's various civil rights to be free from cruel and unusual punishment as well as unequal treatment on the basis of race and religion thereby giving rise to the instant mater.

41. As a direct and proximate result of the misconduct of the Defendants individually and collectively described herein, Plaintiff suffered economic and non-economic damages in an amount to be fully determined in a trial by jury.

42. The Plaintiff is seeking compensatory and punitive damages against each of the Defendants named in the instant matter individually and collectively in an amount to be determined in a trial by jury as well as any and all other Relief deemed necessary and applicable.

## COUNT II

## UNLAWFUL DISCRIMINATION IN VIOLATION OF TITLE VII CIVIL RIGHTS ACT

43. The Plaintiff hereby references and incorporates Paragraphs 1 through 31 as though set forth herein at length.

44. All conditions precedent to the filing of this Complaint have occurred or been performed. See 28 C.F.R. pt. 35, subpt. F.

45. Defendant MNDOC violated Title II of the ADA, 42 U.S.C. §§ 12131–34, and its implementing regulation, 28 C.F.R. pt. 35, by discriminating on the basis of disability, including by treating the Plaintiff unequally on the basis of their race and religion as identified herein.

46. When analyzing a claim under the Equal Protection Clause, the Court must first address whether the plaintiff was treated differently than others who were similarly situated. Klinger v. Dept. of Corrs., 31 F.3d 727, 731 (8th Cir. 1994). "Absent a threshold showing that [he] is

similarly situated to those who allegedly receive favorable treatment, the plaintiff does not have a viable equal protection claim." Id. Second, the Court must address whether the discrimination was purposeful. Id. at 733 (citing Personnel Adm'r of Mass. v. Feeney, 442 U.S. 256, 274 (1979)); Foster v. Wyrick, 823 F.2d 218, 221 (8th Cir. 1987) ("[p]roof of discriminatory racial purpose is required to establish an equal protection violation"). The Court will analyze Smith's equal protection claim using the summary judgment standard because it is necessary to consider the parties' evidence to determine if Smith raised a genuine issue of material fact.

47. Here, there is no dispute that the Plaintiff was treated unequally on the basis of their race due to the fact that the Plaintiff and others were specifically targeted based on their identification of a particular race and their involvement in a particular religious class which establishes a *prima facie* case of discrimination on the basis of race as detailed in the statement of facts.

48. Therefore, the burden of proof shifts on to the Defendants to explain their unequal and disparate treatment of the Plaintiff.

49. As a direct and proximate result of the misconduct of the Defendants individually and collectively described herein, Plaintiff suffered economic and non-economic damages in an amount to be fully determined in a trial by jury.

50. The Plaintiff is seeking compensatory and punitive damages against each of the Defendants named in the instant matter individually and collectively in an amount to be determined in a trial by jury as well as any and all other Relief deemed necessary and applicable.

## COUNT III

## FRAUDULENT MISREPRESENTATION

51. The Plaintiff hereby references and incorporates Paragraphs 1 through 31 as though set forth herein at length.

52. To establish fraudulent misrepresentation in Minnesota, a plaintiff must demonstrate that: (1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffered pecuniary damage as a result of the reliance. Hoyt Props., Inc. v. Prod. Res. Group, L.L.C., 736 N.W.2d 313, 318 (Minn. 2007) (citing Specialized Tours, Inc. v. Hagen, 392 N.W.2d 520, 532 (Minn. 1986)).

53. In the instant matter, the numerous officers complained of conspired with one another to misrepresent the record of the Plaintiff to justify their unlawful conduct and actions taken against the Plaintiff thereby constituting fraudulent misrepresentation as detailed in the statement of facts.

54. As a direct and proximate result of the misconduct of the Defendants individually and collectively described herein, Plaintiff suffered economic and non-economic damages in an amount to be fully determined in a trial by jury.

55. The Plaintiff is seeking compensatory and punitive damages against each of the Defendants named in the instant matter individually and collectively in an amount to be determined in a trial by jury as well as any and all other Relief deemed necessary and applicable.

## COUNT IV

### RETALIATION

56. The Plaintiff hereby references and incorporates Paragraphs 1 through 31 as though set forth herein at length.

57. Title VII bars retaliation based on a Plaintiff's opposition to conduct made unlawful by Title VII, or for participation in a Title VII investigation or proceeding. 42 U.S.C. § 2000e–3; see e.g., Evans v. Int'l Paper Co., 936 F.3d 196, 213 (4th Cir. 2019); Ray v. Int'l Paper Co., 909 F.3d 661, 666 (4th Cir. 2018); Netter v. Barnes, 908 F.3d 932, 937 (4th Cir. 2018); Strothers v. City of Laurel, 895 F. 3d 317, 326-27 (4th Cir. 2018); DeMasters v. Carilion Clinic, 796 F.3d 409, 416 (4th Cir. 2015); Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 298 (4th Cir. 2015) (en banc); Freeman v. Dal-Tile Corp., 750 F.3d 413, 420 (4th Cir. 2014).

58. A plaintiff may prove retaliation either through offering direct or indirect evidence, or through the McDonnell Douglas burden-shifting framework. See, e.g., Strothers, 895 F.3d at 327 (citing Foster v. Univ. of Md.–E. Shore, 787 F.3d 243, 249 (4th Cir. 2015); S.B. ex rel. A.L., 819 F.3d at 78; Rhoads, 257 F.3d at 391.

59. In the instant matter, as detailed in the statement of facts, it was through the Plaintiff's complaints about the unlawful disparate treatment that was taking place that the officers complained of retaliated against the Plaintiff by utilizing erroneous pretexts for taking disparate action against the Plaintiff thereby establishing a *prima facie* case of retaliation.

60. As a direct and proximate result of the misconduct of the Defendants individually and collectively described herein, Plaintiff suffered economic and non-economic damages in an amount to be fully determined in a trial by jury.

61. The Plaintiff is seeking compensatory and punitive damages against each of the Defendants named in the instant matter individually and collectively in an amount to be determined in a trial by jury as well as any and all other Relief deemed necessary and applicable.

## COUNT V

## DEFAMATION

62. The Plaintiff hereby references and incorporates Paragraphs 1 through 31 as though set forth herein at length.

63. To establish a defamation claim in Minnesota, a plaintiff must establish the following three elements: (1) the defamatory statement is "communicated to someone other than the plaintiff," (2) the statement is false, and (3) the statement "tend[s] to harm the plaintiff's reputation and to lower [the plaintiff] in the estimation of the community." *Bahr v. Boise Cascade Corp.*, 766 N.W.2d 910, 919-920 (Minn. 2009) (quoting *Stuempges*, 297 N.W.2d at 255).

64. n the instant matter, the numerous officers complained of misrepresented material information with regards to the character of the Plaintiff and fabricated conduct engaged in to justify their unlawful conduct and actions taken against the Plaintiff thereby constituting fraudulent misrepresentation as detailed in the statement of facts.

65. As a direct and proximate result of the misconduct of the Defendants individually and collectively described herein, Plaintiff suffered economic and non-economic damages in an amount to be fully determined in a trial by jury.

66. The Plaintiff is seeking compensatory and punitive damages against each of the Defendants named in the instant matter individually and collectively in an amount to be determined in a trial by jury as well as any and all other Relief deemed necessary and applicable.

## COUNT VI

### OFFICIAL OPPRESSION - MINN. STAT. ANN. § 603 (West 2008).

67. The Plaintiff hereby references and incorporates Paragraphs 1 through 31 as though set forth herein at length.

68. Pursuant to MINN. STAT. ANN. § 603 (West 2008), A public officer or employee who does any of the following, for which no other sentence is specifically provided by law, may be

sentenced to imprisonment for not more than one year or to payment of a fine of not more than $3,000, or both: (1) intentionally fails or refuses to perform a known mandatory, nondiscretionary, ministerial duty of the office or employment within the time or in the manner required by law; or (2) in the capacity of such officer or employee, does an act knowing it is in excess of lawful authority or knowing it is forbidden by law to be done in that capacity; or (3) under pretense or color of official authority intentionally and unlawfully injures another in the other's person, property, or rights; or (4) in the capacity of such officer or employee, makes a return, certificate, official report, or other like document having knowledge it is false in any material respect.

69. In the instant matter, the Defendants engaged in conduct that was intentional and harmful to the Plaintiff in addition to conduct that was in excess of their lawful authority as detailed in the statement of facts thereby giving rise to the instant action.

70. As a direct and proximate result of the misconduct of the Defendants individually and collectively described herein, Plaintiff suffered economic and non-economic damages in an amount to be fully determined in a trial by jury.

71. The Plaintiff is seeking compensatory and punitive damages against each of the Defendants named in the instant matter individually and collectively in an amount to be determined in a trial by jury as well as any and all other Relief deemed necessary and applicable.

## JURY TRIAL DEMANDED

72. The Plaintiff hereby demands a trial by jury with regards to any and all genuine disputes of material facts.

## PRAYER FOR RELIEF

WHEREFORE, based on the foregoing, the Plaintiff seeks that this Honorable Court enter a judgment against the Defendants as follows:

    A) COMPENSATORY DAMAGES in an amount not less than $3,500,000,000.00 to be determined in a trial by jury

    B) PUNITIVE DAMAGES in an amount to be determined in a trial by jury

    C) COSTS AND FEES associated with litigating the instant matter

    D) ANY AND ALL OTHER RELIEF DEEMED NECESSARY AND APPLICABLE

DATED: December 5, 2023　　　　　　　　　　Respectfully Submitted,