UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jay Rodney Richard Clayborne,	Case No. 23-CV-3612 (JMB/TNL)

    Plaintiff,

v.	**ORDER**

The Minnesota Department of Corrections, Warden Brian Collins (in his individual capacity), Assistant Warden Kristina Rish (in her individual capacity), Captain Crystal Hansen (in her individual capacity), Lieutenant John Klar (in his individual capacity), Lieutenant Mike Lott (in his individual capacity), Lieutenant David W. Evans (in his individual capacity), Sergeant Spencer Lekander (in his individual capacity), Sergeant Thomas Fishback (in his individual capacity), Sergeant Ethan Bjorklund (in his individual capacity), Sergeant Thomas Herman (in his individual capacity), Sergeant Marc Magnusen (in his individual capacity), Officer Matthew Noland (in his individual capacity), Darrel M. Berry (in his individual capacity), Chaplin Edward Stone, and John Does 1–10, inclusive,

    Defendants.

Jay Rodney Richard Clayborne, self-represented, Plaintiff.

Carole C. Olander, Kevin Jonassen, Office of the Minnesota Attorney General, St. Paul, Minnesota, for Defendants.

       Before the Court is the Defendants Minnesota Department of Corrections' (DOC), Warden Brian Collins's, Assistant Warden Kristina Rish's, Captain Crystal Hansen's, Lieutenant John Klar's, Lieutenant Mike Lott's, Lieutenant David W. Evans's, Sergeant

1

Spencer Lekander's, Sergeant Thomas Fishback's, Sergeant Ethan Bjorklund's, Sergeant Thomas Herman's, Sergeant Marc Magnusen's, Officer Matthew Noland's, Darrel M. Berry's, Chaplin Edward Stone's (together, Defendants) Motion to Dismiss Plaintiff Jay Rodney Richard Clayborne's First Amended Complaint (FAC). (Doc. No. 36.) For the reasons discussed below, the Court grants Defendants' motion and dismisses this action.

## BACKGROUND[1]

### A.   Clayborne's Incarceration at MCF-Moose Lake

In June 2019, a Dakota County jury found Clayborne guilty of second-degree criminal sexual conduct. A Dakota County District Court judge sentenced him to seventy months of imprisonment, followed by ten years of conditional release. *See State v. Clayborne*, Indexes #39 and #46, 19HA-CR-17-4780 (Dakota Cnty. Dist. Ct.).[2] Clayborne alleges in his FAC that, while serving his sentence at MCF-Moose Lake, the DOC and numerous correctional officers engaged in wrongful conduct on four occasions, which are described below.

Clayborne alleges that, on September 13, 2022, an unnamed "correctional officer" prevented a fellow inmate from attending Clayborne's "Hebrew Israelite class." (Doc. No. 15 [hereinafter, FAC] ¶ 11.) Clayborne "confronted" the officer by writing him several letters, in which Clayborne informed the officer that he had violated prison policy and

---

[1] The Court accepts all facts alleged in the FAC as true as it must for purposes of resolving Defendants' motion under Federal Rule of Civil Procedure 12(b)(6).

[2] The Court may take judicial notice of public records and consider them on a motion to dismiss. *E.g.*, *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003).

2

Clayborne's First Amendment rights—specifically, his religious and cultural rights. (*Id.* ¶¶ 10–12.) Clayborne was then placed in segregation on grounds that he had threatened the officer. (*Id.* ¶ 12.) Clayborne lodged a grievance with the DOC, but the DOC "sided with the unjust actions taken against [him]." (*Id.*) Clayborne refers to this as "Incident #1."

Clayborne also alleges that, on September 28, 2022, with fifteen days remaining in segregation, he visited the property room of the prison to retrieve some property, where a corrections officer accused Clayborne of stealing the property. (*Id.* ¶¶ 13–14.) This, along with "[m]any other things [that] had happened at this time," resulted in Clayborne being required to spend additional time in segregation. (*Id.*) Clayborne again lodged a grievance with the DOC, but the DOC again "sided with the unjust actions taken against [him]." (*Id.* ¶ 14.) Clayborne refers to this occurrence as "Incident #2."

Clayborne next alleges that, on January 30, 2023, he left his cell and headed toward the prison library. (*Id.* ¶ 15.) Upon seeing that the library was full, he decided to not enter and to come back later. (*Id.* ¶ 16.) An officer did not allow this and commanded that Clayborne "get against the wall." (*Id.*) Even though Clayborne complied, the officer called for backup; Clayborne was thereafter handcuffed and dragged to segregation. (*Id.*) Once there, many unnamed officers encircled, held down, stripped, grabbed at, and mocked Clayborne, who describes this incident as a sexual assault. (*Id.* ¶ 17.) The officers thereafter "secured [Clayborne] to the chair naked" and placed a spit bag on his head. (*Id.* ¶ 18.) He alleges that he also endured cuts and bruises during the ordeal. (*Id.* ¶ 20.) Clayborne was later coerced by the "head officer of segregation" to admit to misconduct,

3

which resulted in fifteen days in segregation, where Clayborne was "fed a poison." (*Id.* ¶¶ 20, 22.) He asserts that the DOC did nothing to help him. (*Id.* ¶ 21.) Clayborne refers to this occurrence as "Incident #3."

Next, on February 24, 2024, Clayborne "fell sick, and temporarily died and came back to life" in the chow hall, which he believes was the result of being poisoned. (*Id.* ¶ 23.) When this happened, "correction officers" cut off his clothes and took him to the hospital while he had convulsions, experienced high blood pressure, and had no heartbeat. (*Id.*) At the hospital, a physician declined Clayborne's requests to check his blood for poisoning, and Clayborne refused certain medications recommended by a physician. (*Id.* ¶¶ 24–26.) When Clayborne returned to MCF-Moose Lake hours later, he alleges that he was placed in segregation for ten days, without reason. (*Id.* ¶ 26.) Again, Clayborne claims that the DOC again did nothing to help him. (*Id.* ¶ 27.) Clayborne refers to this occurrence as "Incident #4."

### B.  This Action

In the six-count FAC, Clayborne asserts the following claims under 42 U.S.C. § 1983: disparate-treatment racial and religious discrimination in violation of the Equal Protection Clause of the U.S. Constitution, Title VII of the Civil Rights Act of 1964 (Title VII), and the Americans with Disabilities Act (ADA); retaliation in violation of Title VII, fraudulent misrepresentation; defamation; and "official oppression" in violation of a Minnesota state statute. In the FAC, Clayborne seeks $3.5 billion in compensatory damages and an undetermined amount of punitive damages. (FAC at 17.)

## DISCUSSION

Defendants now move to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(6), arguing that Clayborne's claims should be dismissed because his allegations are deficient under the basic pleading requirements set forth in Federal Rule of Civil Procedure 8(a). In addition, Defendants move to dismiss the FAC on the grounds that the factual allegations in the FAC fail to state a cognizable claim for relief. As discussed below, the Court concludes that Clayborne's allegations do not satisfy Rule 8(a) and fail to state a claim as required by Rule 12(b)(6).

When considering a motion to dismiss, courts take all facts alleged in a complaint to be true and then determine whether the complaint states a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A pleading has facial plausibility when its factual allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In this analysis, courts construe the allegations and draw inferences from them in the light most favorable to the plaintiff. *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018). However, courts will not give the plaintiff the benefit of unreasonable inferences, *Brown v. Medtronic, Inc.*, 628 F.3d 451, 461 (8th Cir. 2010), and are "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Further, though pleadings drafted by self-represented parties are "liberally

5

construed," they must still contain specific facts supporting their conclusions. *Kaylor v. Fields*, 661 F.2d 1177, 1182–83 (8th Cir. 1981).

## I.     MINIMUM PLEADING REQUIREMENTS

Defendants argue that Clayborne's pleading falls short of the minimum pleading requirements set forth in Rule 8(a) because "he fails to explain what conduct, and which Defendant, is connected to his legal claims for relief," and, as a result, Defendants are not on notice of the claims against them. (Doc. No. 38 at 6–7.) Clayborne disagrees, asserting that because he seeks "justice" instead of "relief," Rule 8(a) does not apply. (Doc. No. 43 ¶¶ 13–14, 64.)[3] Defendants are correct; the FAC does not satisfy Rule 8(a).

In order to survive this motion, a litigant—including a self-represented litigant like Clayborne—must properly plead their claims under Rule 8(a). *See Iqbal*, 556 U.S. 662; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Nygard v. City of Orono*, No. 23-CV-509 (DWF/DLM), 2024 WL 69927, at *4 (D. Minn. Jan. 5, 2024) (noting that self-represented litigants are "still required to comply with the rules," specifically Rule 8(a)). Rule 8(a) requires that a pleading set forth the three following things: (1) the grounds for the Court's jurisdiction, (2) "a short and plain statement of the claim showing that the pleader is entitled to relief," and (3) "a demand for the relief sought." Fed. R. Civ. P. 8(a). Rule 8(a)'s purpose is to provide defendants with fair notice of the claims against them and the

---

[3] Contrary to Clayborne's assertion, the FAC does request relief. Specifically, Clayborne states eight times that he "is seeking compensatory and punitive damages against each of the Defendants," including "injunctive relief and damages," an award of $3.5 billion in compensatory damages, and for "any and all other relief deemed necessary and applicable." (FAC ¶¶ 3, 4, 30, 42, 50, 55, 61, 66, 71.)

6

grounds for such claims. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 319 (2007). A pleading that falls short on any of these three elements fails to state a claim and, therefore, is properly dismissed under Rule 12(b)(6).

Pleadings in which a litigant does not identify the specific defendant against which each claim is asserted (so-called "kitchen-sink pleadings") fall short of the minimum pleading requirements set forth in Rule 8(a). *See, e.g.*, *Nygard*, 2024 WL 69927, at *3–4 (dismissing kitchen-sink pleading in which pro se plaintiff "appears to bring every conceivable claim against every conceivable defendant" for violating Rule 8(a)) (quotation omitted); *Hatton v. Jesson*, No. 14-CV-3405 (JNE/DJF), 2023 WL 9004767, at *6 (D. Minn. Nov. 27, 2023), *report and recommendation adopted*, 2023 WL 8950842 (D. Minn. Dec. 28, 2023) (dismissing pro se plaintiff's complaint under Rule 8(a) because he "asserts all claims against all Defendants, without articulating with specificity what, exactly, each Defendant is alleged to have done or failed to do to violate his rights"); *Brown v. Ludeman*, No. 11-CV-2859 (JRT/ECW), 2023 WL 4399079, at *6 (D. Minn. July 7, 2023), *report and recommendation adopted*, 2023 WL 5703194 (D. Minn. Sept. 5, 2023) (same); *Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 831 (D. Minn. 2012) (same); *Tully v. Bank of Am., N.A.*, No. 10-CV-4734 (DWF/JSM), 2011 WL 1882665, at *6 (D. Minn. May 17, 2011) (same).

Such pleadings are not permitted because they unfairly "shift[] onto the defendant[s] and the court the burden of identifying the plaintiff's genuine claims and determining which of those claims might have legal support." *Gurman v. Metro Hous. & Redevelopment Auth.*, 842 F. Supp. 2d 1151, 1153 (D. Minn. 2011); *see also Brown*, 2023

7

WL 4399079, at *6 (observing that kitchen-sink pleadings place "an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage").

Here, Clayborne does not identify which of the fourteen individual defendants was involved in which instance of alleged wrongdoing. Instead, at most, he implicates unspecified prison employees in his factual descriptions of each incident, as follows: in Incident #1, Clayborne implicates only "a correctional officer" and "two officers" (*see* FAC ¶¶ 10–12); in Incident #2, he implicates "the Sergeant of that [property] department" and a "property officer" (*see id.* ¶¶ 13–14); in Incident #3, he implicates "an officer," numerous other "officers," and "[t]he head of segregation" (*see id.* ¶¶ 15–22); and in Incident #4, he implicates "many inmates and corrections officers" and the "duty captain of Moose Lake prison." (*See id.* ¶¶ 23–27.) He further asserts each of his claims against "each of the Defendants named in the instant matter individually and collectively," (*id.* ¶¶ 42, 50, 55, 61, 66, 70), and states that he seeks damages "against each of the Defendants . . . individually and collectively." (*Id.* ¶ 30.) Thus, the FAC does not satisfy Rule 8(a).

## II.     PLAUSABILITY OF ALLEGATIONS

Defendants also argue that the FAC should be dismissed because, Rule 8(a) deficiencies aside, the FAC fails to state any cognizable claim. Specifically, Defendants contend that the federal claims underlying the section 1983 claim lack sufficient or plausible allegations on their essential elements and, in the case of two of the Defendants, are barred by the Eleventh Amendment. Defendants also argue that the Court should not exercise pendent jurisdiction over Clayborne's state-law claims upon dismissal of the

federal claims. As discussed below, the Court concludes that the allegations contained in the FAC cannot survive the Defendants' Rule 12(b)(6) challenge.

### a. Federal Claims

Clayborne's lawsuit is styled as arising under 42 U.S.C. § 1983, which "provides a remedy to any citizen deprived of a right secured by federal law by a person acting under color of state law." *Dickens v. State of Mo. by Ashcroft*, 887 F.2d 895, 896 (8th Cir. 1989). That said, to be entitled to the remedy provided by section 1983, Clayborne must first sufficiently plead a violation of his rights under federal law in his federal claims. The Court addresses each possible federal claim separately.

#### i. Equal Protection Claim

Construing the FAC liberally, it appears to allege that Defendants violated the Equal Protection Clause of the Fourteenth Amendment. (FAC ¶¶ 40, 46.) A viable equal-protection claim requires allegations that a plaintiff was treated differently than a similarly situated individual or class of individuals that received favorable treatment, and that the reason he was treated differently was due to discriminatory animus. *Klinger v. Dep't of Corrs.*, 31 F.3d 727, 731 (8th Cir. 1994). The FAC, however, makes no such specific allegation. (*See generally* FAC.) Instead, the FAC contains, at most, conclusory allegations that "Plaintiff was treated unequally on the basis of their race due to the fact that the Plaintiff and others were specifically targeted based on their identification of a particular race and their involvement in a particular religious class . . . ." (*Id.* ¶ 47.) It does not allege that Clayborne was similarly situated to those who received favorable treatment, and, as a result, the FAC does not state a viable equal protection claim.

### ii. Title VII Disparate-Treatment Discrimination and Retaliation Claims

The FAC also alleges that Defendants violated Title VII in two ways—in Count II, he alleges disparate-treatment discrimination, and in Count IV, he alleges retaliation. Title VII applies only to employers and prohibits discrimination only in the employer-employee relationship. Civil Rights Act of 1964, Pub. L. No. 88-352, § 701, 78 Stat. 253–66 (1964), *codified at* 42 U.S.C. § 2000e, *et seq.* Clayborne does not allege that he was ever employed by MCF-Moose Lake. As a result, Counts II and IV fail to state claims for relief.

### iii. ADA Claim

The FAC also appears to allege a violation of the ADA. (*See* FAC ¶ 45.) To make out a claim under the ADA, Clayborne must at least allege that "he is a qualified individual with a disability." *Rinehart v. Weitzell*, 964 F.3d 684, 688 (8th Cir. 2020). Clayborne does not allege that he has or is regarded as having a disability. As a result, the FAC does not state a cognizable ADA claim.

### iv. Federal Claims for Monetary Damages Against DOC and Stone

Finally, to the extent that the FAC includes federal claims for monetary damages against a state agency and state officials in their official capacity, such claims would be barred. The Eleventh Amendment of the U.S. Constitution precludes actions for damages against the states in federal court, including in section 1983 claims. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *see also* U.S. Const. amend. XI.

Here, the DOC is a state agency. *See* Minn. Stat. ch. 241. Because Minnesota has not consented to suit in federal court, Clayborne's claims against the DOC must be dismissed. *See, e.g., DeGidio v. Perpich*, 612 F. Supp. 1383, 1389 (D. Minn. 1985)

(dismissing suit brought under section 1983 against DOC and DOC employees in their official capacities on grounds that state had not consented to suit).

As for Stone, Clayborne does not specify that his claims against Stone are brought against Stone in his individual capacity. Absent an "express[] and unambiguous[] state[ment]" that he is suing Stone in his individual capacity, the Court assumes that the suit is brought against him in his official capacity. *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). Claims "against a public employee in his or her official capacity is merely a suit against the public employer," which, as discussed above, is barred by the Eleventh Amendment. *Id.; see also Andrus ex rel. Andrus v. Ark.*, 197 F.3d 953, 955 (8th Cir. 1999) ("A claim for damages against a state employee in his official capacity is barred under the Eleventh Amendment.").

      b.     **State-Law Claims**

The Court's exercise of pendent jurisdiction over Clayborne's state-law claims (i.e., fraudulent misrepresentation, defamation, official oppression) becomes discretionary if the Court dismisses the claims over which it had original jurisdiction (i.e., the federal claims). *See* 38 U.S.C. § 1367(c)(3) (providing that federal court may decline to exercise supplemental jurisdiction over state claims if claims over which it has original jurisdiction have been dismissed). Because Clayborne's federal claims are dismissed under Rules 8(a) and 12(b)(6), *supra*, the Court declines to exercise pendent jurisdiction over the three state-law claims. *E.g.*, *Sebrite Agency, Inc. v. Platt*, 884 F. Supp. 2d 912, 922 (D. Minn. 2012)

11

(declining to exercise pendent jurisdiction over and dismissing plaintiff's twelve state-law claims after dismissal of two federal claims).

As for the form of dismissal, the fraudulent misrepresentation and defamation claims will be dismissed without prejudice. However, the Court dismisses the claim for "Official Oppression—Minn. Stat. § 603" *with* prejudice for two reasons. First, the Minnesota Legislature repealed Minn. Stat. § 603 in 1974. *See* 1974 Minn. Laws 707 § 12. Second, the language used in the FAC to support this claim appears to come from Minn. Stat. § 609.43, which is a criminal statute prohibiting state officials from refusing to perform mandatory and non-discretionary duties. To the extent the FAC asserts a claim under section 609.43, it fails because Minnesota's criminal statutes do not provide individuals with a private right of action, especially one brought in federal court. *E.g.*, *Larson v. Dunn*, 460 N.W.2d 39, 47 n.4 (Minn. 1990) (providing that criminal statute does not give rise to civil cause of action except if statute expressly or clearly implies otherwise).

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Clayborne's First Amended Complaint is dismissed in its entirety, as follows:

    a. Count I, Count II (ADA, Equal Protection), Count III (Fraudulent Misrepresentation), and Count V (Defamation) are dismissed WITHOUT PREJUDICE; and

    **b.** Count II (Title VII—Disparate Treatment), Count II (ADA and Equal Protection as against Stone in his official capacity), Count IV (Title VII-Retaliation), and Count VI (Official Oppression) are dismissed WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: June 24, 2024                                                    /s/ *Jeffrey M. Bryan*
                                                                                 Judge Jeffrey M. Bryan
                                                                                 United States District Court